| | |
|---|---|
| CV 01 0163651 S | : SUPERIOR COURT |
| LUCY VACCARRELLA | : J.D. OF WATERBURY |
| VS. | : AT WATERBURY |
| WAL-MART STORES | : JANUARY 24, 2005 |

**PLAINTIFF'S SUPPLEMENTAL DISCLOSURE OF EXPERT WITNESSES**

The Plaintiff, **LUCY VACCARRELLA**, hereby gives notice of her disclosure of expert witnesses who may testify at trial.

**Names and Addresses**

>Scott Gray, M.D.
>Connecticut Family Orthopedics
>33 Hospital Avenue
>Danbury, CT

In addition, the Plaintiff reserves the right to and may elicit opinions upon cross-examination of any expert witnesses called by the Defendant at trial.

**Subject Matter**

The general subject matter upon which the medical experts will testify includes the medical condition of the Plaintiff, the nature and extent of his injuries, the causation of those injuries, the Plaintiff's prognosis, and any permanency.

## Substance of the Facts and Opinions

### Scott Gray, M.D.

Dr. Gray will testify regarding his examination and treatment of Plaintiff. It is expected that Dr. Gray will testify in accordance with his treatment notes and evaluation and consultation reports that have been provided through discovery. Evidence or testimony will include the nature and extent of the plaintiff's injuries, causation, prognosis and mitigation. Dr. Gray will testify that the injuries the Plaintiff suffered were directly related to the accident of November 20, 1999. These injuries include: right hip pain, buttocks pain, pain in the right lumbar region radiating into her lower right back, myofascia pain, chronic lumbar radiculopathy, and aggravation and/or exacerbation of a pre-existing lower back condition. Dr. Gray is expected to testify that her treatment of the plaintiff for injuries sustained in the November 20, 1999, accident, as more fully described in his medical reports and records, was both reasonable and necessary. Dr. Gray is also expected to testify regarding the future treatment and cost of treatment, if any, the plaintiff may have to undergo as a result of the November 20, 1999, accident.

### Summary of the Grounds for Each Opinion

The medical witnesses' opinions will be based upon examination and treatment of the plaintiff; interviews with the plaintiff; and review of medical records and reports and diagnostic test results; and upon their knowledge, education, experience and training.

THE PLAINTIFF,
LUCY VACCARRELLA

By_____
Joseph D. Foti, Esq.
MOORE, O'BRIEN, JACQUES & YELENAK
Her Attorneys

### CERTIFICATION

This is to certify that a copy of the foregoing was mailed postage prepaid on this 24th day of January 2005, to:

Anita Varunes, Esquire
Kenney & Brimmer, LLC
5 Grand Street
Hartford, CT 06106

_____
Joseph D. Foti



## CONNECTICUT FAMILY
# ORTHO-
# PEDICS

Danbury Foot &
Ankle Center

Danbury P.T. &
Sports Medicine

Ronald A. Ripps, M.D., C.I.M.E.

Lawrence C. Schweitzer, M.D.

F. Scott Gray, M.D.

James W. Depuy, M.D.

David H. Elfenbein, M.D.

Christopher J. Cassels, M.D.

Michael Z. Fein, D.P.M.

DeAnna Wolff, P.A.-C.

Heather L. Storms, P.A.-C.

33 HOSPITAL AVENUE
DANBURY, CT 06810-6037

PHONE (203) 792-5558
FAX   (203) 731-3213

90 GROVE STREET
RIDGEFIELD, CT 06877

PHONE (203) 431-6515
FAX   (203) 431-1749

E-MAIL CFO@CFORTHO.ORG
WWW.CFORTHO.ORG

January 18, 2005

Joseph Foti, Jr., Attorney at Law
Westgate Office Center
700 West Johnson Avenue, Suite 207
Cheshire, CT -

Re:  Vaccarrella, Lucy
DOI: 11/20/99

Dear Mr. Foti:

I have received you letter dated October 4th, 2004. I first evaluated Ms. Vaccarrella on October 16th, 2003. At that time she told me that she had a history of at least 10 years of back trouble, six prior lumbar spine surgeries in Waterbury and had been experiencing constant pain in the low back for the last eight to ten years. She was currently under the care of a pain management specialist. This information is factual.

During that first visit she did not mention at all any injuries suffered in the past including the one that you referenced on November 20th, 1999. I believe that she most certainly could have exacerbated her chronic back condition in this accident and triggered the onset of symptoms that became intolerable resulting in the need for her spine surgery. There is no denying however that her trouble predates the injury.

I therefore believe that her injury is certainly a part of the causation of her worsening symptoms however not the primary incidental cause of her pain or subsequent need for surgery. My feeling is that at most there is a 40% contribution to the more rapid need for her surgical endeavor. This is my feeling within reasonable medical probability.

Respectfully yours,

F. Scott Gray, MD
CFO

**Westlaw.**

Not Reported in A.2d  
2000 WL 234318 (Conn.Super.)  
(Cite as: 2000 WL 234318 (Conn.Super.))

Page 1

**H**  
Only the Westlaw citation is currently available.

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Superior Court of Connecticut.  
Carol ROBERTS,  
v.  
Lu TON-YONG, et al.  
**No. CV 980486909S.**

Feb. 10, 2000.

MEMORANDUM OF DECISION

KOCAY.

*1 The issue presently before this court is whether by way of a motion in limine filed by the defendants Lu Ton-Yong, Quan Lin, and Phillip Stewart, [FN1] the plaintiff Carol Roberts, plaintiff's counsel or any of plaintiff's witnesses should be precluded from mentioning, commenting on, and testifying to Roberts' alleged left shoulder injury and/or any treatment thereof during the trial of the above captioned action. On January 10, 2000, this court heard oral argument on the motion in limine. Now herein, after reviewing the merits of the motion, this court hereby grants the motion in limine in part only, as set out more fully herein, as to the plaintiff's expert witness and treating orthopedic David M. Kruger, M.D., because it fails to establish the necessary causal connection between the alleged shoulder injury and the subject motor vehicle accident.

> FN1. Of procedural note, the defendants Lu Ton-Yong and Quan Lin, by and through their joint counsel, filed the motion in limine dated December 17, 1999, in which the defendant Phillip Stewart joined in and adopted by way of filing his own motion in limine on January 3, 2000.

It is within the discretion of this court to entertain the defendants' motion in limine at this point in the proceedings. "The judicial authority to whom a case has been assigned for trial may in its discretion entertain a motion in limine made by any party regarding the admission or exclusion of anticipated evidence. If a case has not yet been assigned for trial, a judicial authority may, for good cause shown, entertain the motion. Such motion shall be in writing and shall describe the anticipated evidence and the prejudice which may result therefrom. All interested parties shall be afforded an opportunity to be heard regarding the motion and the relief requested. The judicial authority may grant the relief sought in the motion or *such other relief as it may deem appropriate,* may deny the motion with or without prejudice to its later renewal, or may reserve decision thereon until a later time in the proceeding. (Emphasis added.) Practice Book § 15-3. "Since the granting of a motion in limine is not, and ought not be a ruling on evidence, the movant should frame his motion carefully so that it does not appear to be a request for a ruling upon the admissibility of evidence before the evidence is offered. Therefore a movant's motion might take the form of a request that the court order opposing counsel to refrain from raising the potentially prejudicial issue until he has secured a ruling from the court, in the absence of the jury, that the question is permissible by evidentiary standards. Such a motion does not require the court to rule on admissibility, it merely invokes the court's authority to control the conduct of the trial. The motion, if granted, does not preclude the nonmoving party from offering the evidence, it merely requires him to procure a preliminary ruling on its admissibility in the absence of the jury. If the court rules that the evidence is admissible, it will be presented to the jury. However, if the court rules that it is inadmissible, then the prejudice which would have been implanted in the minds of the jurors will have been avoided." Practice Book Annotated § 2.6, pp. 61-62.

*2 In light of the above and for the reasons stated below, this court hereby grants pursuant to the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2000 WL 234318 (Conn.Super.)
(Cite as: 2000 WL 234318 (Conn.Super.))

Page 2

movants' request that Roberts' expert witness and treating orthopedic, Doctor David M. Kruger, M.D., refrain from commenting on, mentioning and/or discussing the alleged shoulder injury or any treatment thereof in the presence of the jury during the trial of this action. Thus, it is ordered that Roberts' attorney must first secure a ruling from this court, outside the presence of the jury, that anticipated evidence, discussion or testimony that might concern Dr. Kruger and Roberts' shoulder injury is admissible by evidentiary standards.

The relevant facts of this case are as follows: On December 31, 1996, Roberts allegedly sustained physical injuries, including but not limited to a left shoulder injury, when she was a passenger in a motor vehicle that was being driven by Stewart when struck by a motor vehicle operated by Lin and owned by Ton-Yong. On March 23, 1998, Roberts filed suit against Stewart, Lin and Ton-Yong for claims sounding in negligence. In her complaint, Roberts alleges that her injuries and losses were proximately caused by the defendants' carelessness and negligence in the operation of their motor vehicles. By way of the motion in limine sub judice, the defendants are moving to preclude from evidence any testimony relating to Roberts' alleged shoulder injury on the ground that Roberts' expert testimony does not meet the requisite legal standard of medical probability as to the causal connection between Roberts' shoulder injury and the subject motor vehicle accident. In her objection to the motion in limine, Roberts argues that her expert's testimony is based on reasonable medical probabilities. Yet, this court finds otherwise after reviewing Dr. Kruger's deposition testimony in light of the prevailing legal authority.

Notwithstanding the obvious to a person learned in legal principles, this court notes that in order for Roberts to prevail on her claim of an alleged shoulder injury she must prove, inter alia, that her shoulder injury was proximately caused by the motor vehicle accident resulting from the defendants' negligence. "Causation may be proved by circumstantial evidence and expert testimony." (Quotation marks omitted.) *Shelnitz v. Greenberg*, 200 Conn. 58, 66, 509 A.2d 1023 (1986). "Expert evidence is often used to establish the existence, extent or cause of an injury or disease." *Aspiazu v. Orgera*, 205 Conn. 623, 630, 535 A.2d 338 (1987).

"[T]he medical effect upon the human system of the infliction of injuries, is generally not within the sphere of the common knowledge of a lay witness ..." (Quotation marks omitted.) *Id.*, 631.

"To be entitled to damages a plaintiff must establish a causal relationship between the injury and the physical condition which he claims resulted from it ... This causal connection must rest upon more than surmise or conjecture ... A trier is not concerned with possibilities but with reasonable probabilities ... [The causal relationship between an injury and its later physical effects may be established] by the direct opinion of a physician, by his deduction by the process of eliminating causes other than the traumatic agency, or by his opinion based upon a hypothetical question ... Any expert opinion that describes a 'condition' as possible or merely fifty-fifty is based on pure speculation." (Citations omitted; quotation marks omitted.) *Aspiazu v. Orgera, supra*, 205 Conn. 630-32. "An expert opinion cannot be based on conjecture or surmise but must be reasonably probable ... Any expert opinion that describes a condition as possible or merely fifty-fifty is based on pure speculation." (Citation omitted; internal quotation marks omitted.) *Id.*, 632.

*3 "To be reasonably probable, a conclusion must be more likely than not. Whether an expert's testimony is expressed in terms of a reasonable probability that an event has occurred does not depend upon the semantics of the expert or his use of any particular term or phrase, but rather, is determined by looking at the entire substance of the expert's testimony." (Citation omitted.) *Struckman v. Burns*, 205 Conn. 542, 555, 534 A.2d 888 (1987). "As long as it is clear that the opinion of the expert is expressed in terms of probabilities, the opinion should be submitted into evidence for a jury's consideration ... It is not necessary for [a] court to determine whether the disputed portions of the reports met the standard of reasonable probability."

(Citation omitted.) *Id.*, 555-56. "It has long been recognized that, in order to avoid speculation and conjecture, 'a trier is not concerned with possibilities but with reasonable probabilities.' " *Vickers v. Jessup*, 32 Conn.App. 360, 363, 629 A.2d 457, cert. granted, 227 Conn. 922, 632 A.2d 701 (1993), quoting *Boland v. Vanderbilt*, 140

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2000 WL 234318 (Conn.Super.)
(Cite as: 2000 WL 234318 (Conn.Super.))

Page 3

Conn. 520, 525, 102 A.2d 362 (1953). "The essential facts on which an expert opinion is based are an important consideration in determining the admissibility of his opinion." *Id.*, 366.

"An expert opinion or conclusion need not be based on absolute certainty so long as the opinion is stated in terms of the probable and not merely the possible." C. Tait & J. LaPlante, Connecticut Evidence (2d Ed.1988) § 7.16. 1, p. 172. "To avoid speculation, opinions and conclusions must be reasonably probable and not merely possible." C. Tait & J. LaPlante, *supra*, § 7.16.4, p. 176.

In light of the foregoing legal authority, Roberts may use circumstantial evidence and direct expert testimony to prove her alleged shoulder injury was caused by the motor vehicle accident. As such, any medical expert testimony Roberts might seek to admit into evidence as to the causal connection between her alleged shoulder injury and the accident must meet the requisite legal standard of medical probability, for its failure to would prejudice and unduly influence the minds of the jurors. This court finds that Dr. Kruger's deposition testimony does not meet the requisite standard of medical probability necessary to establish the element of causation required for Roberts' claim that her shoulder injury resulted from the defendants' negligent operation of their motor vehicles. Excerpts from Dr. Kruger's deposition testimony and medical report dated October 12, 1999, both submitted by the parties involved, support this court's ruling.

The deposition testimony reveals that although Dr. Kruger first treated Roberts for injuries relating to the instant motor vehicle accident on January 7, 1997, and again treated her on January 16, 1997, and March 3, 1997, Roberts did not complain of shoulder pain to Dr. Kruger until her March 3, 1997 treatment date. (Depo. p. 10, lines 2-3.) This was the first time that Dr. Kruger learned Roberts had any type of shoulder problem, past or present. (Depo. p. 10, lines 21-23.) Dr. Kruger states that he "did treat [Roberts] for shoulder issues subsequently [to the motor vehicle accident], the causalty of which is problematic." (Depo. p. 9, lines 18-20.) "[P]erhaps in some small part by using an assistive device she exacerbated this pre-existing condition, but I do not have evidence that she directly injured her shoulder in the motor vehicle accident of 12/31/96." (Dr. Kruger's Medical Report dated October 12, 1999.)

*4 In response to a direct examination deposition question posed by Roberts' attorney, "if this particular patient had prior problems with her skeletal system and muscle related problems, could that develop into shoulder pain?" Dr. Kruger answered, in part: "She did say that she was using a walker because of her legs. And, actually, she was having difficulty using the walker, she claims now, in part because of her shoulder pain and would use a cane. She was using a cane in her right hand, which she now says she couldn't use, and used her left hand because her shoulder hurt. In fact, one would construct an idea that she either hurt her shoulder in the car accident and had other areas of pain and didn't mention it to anyone for over a month, close to two months. Or, one could construct the idea that here is a sick woman who has had a bad shoulder in the past and now she is limping around using assistive devices, that being a cane or a walker, and she injured her shoulder which already had a preexisting condition and now she's hurt her shoulder as a consequence from her injuries from this motor vehicle accident. Or, one can construct the theory that she had injuries from the motor vehicle accident and two months later had a shoulder problem that has nothing to do with it and she is a sick lady who gets shoulder problems from time to time. I think those are three possible explanations, and I think the causality of this shoulder problem is a problem." (Depo. p. 12-14.) When Roberts' counsel later asked, "Doctor, would you give an opinion as far as the effect of trauma on her shoulder as far as the car accident within reasonable medical probability?" Dr Kruger responded: "I'm gray on this. I really am. And I want to be fair to everyone involved here and I'm not sure I have medical certainty." (Depo. p. 14, lines 6-12.) As to which Roberts' counsel immediately reiterated: "Not certainty. Probability." (Depo. p. 14, line 13.) Dr. Kruger thereafter replied: "Probability. In my gut, based on not a lot of science, I suspect that she probably did not injure her shoulder in the motor vehicle accident. But it is not unreasonable to think that because she was hobbling from her legs that she exacerbated a preexisting condition where--she is a sick woman. She was on steroids. She has bad tissues and she

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2000 WL 234318 (Conn.Super.)
(Cite as: 2000 WL 234318 (Conn.Super.))

Page 4

was using a walker or a cane or toting herself around because of her bad legs and may have exacerbated her shoulder that way. But again, in all fairness to everyone, and I'm just trying to be honest about this, I'm not sure that's true either. She had a bad shoulder in the past. Bad shoulders act up from time to time. It is a difficult issue." (Depo. pp. 14-15.)

In testifying to his opinion, Dr. Kruger stated "I'm not sure. She had [a] long history of shoulder problems. She never mentioned her shoulder for weeks, close to months after the accident. My gut feeling is she didn't hurt it at the time of the accident, although she could have. It's plausible that this bad shoulder became inflamed and overused because she was walking around with assistive devices as a direct consequence of the injuries from the motor vehicle accident. And also, as noted by that, she had a rheumatoid or lupus flare-up in her hand and that she could have just independently had a reactivation of her shoulder problem. Of those three things, I'm somewhat leaning towards thinking the second thing is the truth, but I don't know ... The second thing is that she had a bad shoulder to start with and tooling around with the walker and the cane and limping and pulling stirred up an underlying shoulder disease." (Depo. p. 20-21.) When asked "is it your opinion, Doctor, within a reasonable medical probability that the use of a cane and/or walker would lead to a problem with her left shoulder?" Dr. Kruger opined "[t]hat's possible. I don't know that's a fact. I think I said a few times already that it's not an unreasonable presumption of the three possibilities I put out. I am not aware of the other possibilities. But of the three possibilities I put out, that's probably my favorite, but I'm not sure." (Depo. p. 22, lines 14-23.)

*5 Furthermore, Dr. Kruger opined: "I have thought about this case a lot this week, I think my opinion is sort of maturing on the subject after having reviewed it twice this week. If it didn't, it's my current opinion that it's one of those things with some leaning that it may have been a preexisting condition exacerbated by walking around on canes and crutches. I think Mrs. Roberts actually believes she was injured in the accident. I don't have any documentation to that effect and I don't know that either the injury or the exacerbation are true." (Depo., p. 28, lines 15-24.) "These, to me, are the three possibilities. I think the best bet is the second one, which is an exacerbation from a preexisting condition from using assistive devices and being gimpy and pulling herself around, but I don't know that to be a fact. And I have tried to be very fair and honest about this." (Depo. p. 40-41.) "[M]y gut feeling is she didn't get an acute injury in the car crash or if walking around with crutches put her over the edge, I don't know." (Depo. p. 46, lines 7-9.)

In light of the foregoing excerpts, Dr. Kruger's deposition testimony is not based on medical probabilities, but possibilities. It is evident from his deposition testimony that he could not state with medical probability that Roberts' shoulder injury was causally connected to the motor vehicle accident involved in the instant suit. Although it consists of educated possibilities, Dr. Kruger's deposition testimony concerning the causality of Roberts' shoulder injury is nonetheless speculation. "Speculation filtered through a jury is still speculation." (Internal quotation marks omitted.) *Petriello v. Kalman*, 215 Conn. 377, 393, 576 A.2d 474 (1990). As such, any comments or discussion concerning Dr. Kruger's testimony as to Roberts' shoulder injury would prejudice the jury and, consequently, cannot be mentioned in the presence of the jury, unless a ruling securing its admissibility is granted. Therefore, if Roberts seeks to admit the subject anticipated evidence into evidence at the trial of this matter, then she must do so in the absence of the jury. If this court later rules that the evidence is admissible, the evidence will be presented to the jury. Yet, if this court rules that the evidence will be inadmissible, then the jurors' minds will not be biased.

Additionally, this court hereby denies without prejudice to its later renewal that part of the motion in limine that requests Roberts herself or her attorney be precluded from mentioning or referencing her alleged shoulder injury at any time during trial. This court's research has not turned up any case in which a plaintiff has been precluded from testifying to an alleged injury and its cause for lack of supporting expert testimony based on medical probability as to the causation of the alleged injury; however, there are cases in which reviewing courts have reversed judgments rendered in favor of plaintiffs because the plaintiffs' own

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2000 WL 234318 (Conn.Super.)
(Cite as: 2000 WL 234318 (Conn.Super.))

Page 5

testimony on the causation of the alleged injury failed to satisfy the plaintiffs' burden of proof. In such cases, the alleged injury at issue was not of a type within the common knowledge of a lay person but within the field of expert knowledge thereby mandating expert medical testimony to support an award of damages for the plaintiffs.

*6 In support of the foregoing, see *Sickmund v. Connecticut Co.*, 122 Conn, 375, 379, 189 A. 876 (1937), where the court stated: "Nor can the plaintiff's own testimony from which the fall, as distinguished from the burn, might be inferred as the cause, satisfy the burden which was hers. This is because of our well established rule that 'When a topic requiring special experience of an expert forms a main issue in the case, the evidence on that issue must contain expert testimony or it will not suffice.' ... This issue clearly falls within this rule." (Citation omitted.) Also see *O'Meara v. Columbian National Life Ins. Co.*, 119 Conn. 641, 645, 178 A. 357 (1935), cited and relied upon by *Sickmund*, where the cause of a decedent's unconscious condition was in issue: "The effects upon the human system of diseases or injuries such as are here involved are not within the sphere of common knowledge. To understand such matters, the testimony of witnesses possessing special knowledge and skill in the sciences of medicine and surgery is required. Whether the injuries were of such character as in reasonable probability would have caused his unconsciousness presented a medical question requiring the testimony of men skilled in that profession.

It was not permissible for the jury of laymen without such expert testimony to speculate as to the cause of his unconscious condition." *Sickmund v. Connecticut, supra,* 122 Conn. 379-80, quoting, *O'Meara v. Columbian National Life Ins. Co., supra,* 119 Conn. 645. *Sickmund* held that "[t]he production of expert testimony to show the causal connection here was essential to the plaintiff's case." *Sickmund v. Connecticut Co., supra,* 122 Conn. 380. "[T]he plaintiff's testimony that the injury to her leg and not the burn on her head, was the cause of her being taken to the hospital, was insufficient to support a conclusion by the jury that the former was the cause of her diabetic upset, since lay testimony was not competent to resolve that issue lying within the field of expert knowledge.

But the question, 'What was the cause of your being taken to the hospital?' was properly allowed, calling, as it patently did, simply for a statement of her understanding of why she entered the hospital." *Id.,* 381. Also see *Bates v. Carroll,* 99 Conn. 677, 679, 122 A. 562 (1923), where expert testimony was necessary to establish that cancer was caused by the injury sustained in an automobile accident. Although the foregoing cases held medical expert testimony was necessary to uphold a verdict in favor of the plaintiffs, the plaintiffs themselves were not precluded from testifying as to their alleged injuries.

In light of above legal authority, Roberts and her attorney are not precluded from commenting on the alleged shoulder injury and its alleged cause during the trial of this matter, provided that the anticipated evidence is found to be relevant and not barred by any evidentiary exceptions.

*7 "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue ... [E]vidence need not exclude all other possibilities [to be relevant]; it is sufficient if it tends to support the conclusion [for which it is offered], even to a slight degree ... [T]he fact that evidence is susceptible of different explanations or would support various inferences does not affect its admissibility, although it obviously bears upon its weight. So long as the evidence may reasonably be construed in such a manner that it would be relevant, it is admissible ..." (Citations omitted; internal quotation marks omitted.) *State v. Evans,* 44 Conn.App. 307, 314, 689 A.2d 494, cert. denied, 240 Conn. 924, 692 A.2d 818 (1997). "The trial court has broad discretion in determining the relevancy of evidence ... Its ruling will only be overturned if there is an abuse of discretion." (Citations omitted.) *Aspiazu v. Orgera, supra,* 205 Conn. 634.

"Evidence is relevant only when it tends to establish the existence of a material fact or to corroborate other direct evidence in the case ... [T]he test of relevancy is not whether the answer sought will elucidate any of the main issues, but whether it will to a useful extent aid the court or jury in appraising the credibility of the witness and in assessing the probative value of the direct testimony."

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d
2000 WL 234318 (Conn.Super.)
**(Cite as: 2000 WL 234318 (Conn.Super.))**

Page 6

(Citations omitted; internal quotation marks omitted.) *State v. Battista,* 31 Conn.App. 497, 513, 626 A.2d 769, cert. denied, 227 Conn. 907, 632 A.2d 696 (1993). Although this court is precluding Dr. Kruger's medical testimony as to the shoulder injury because it fails to meet the requisite medical probabilities standard, and expert testimony appears necessary to prove causation for Roberts to prevail on her shoulder injury claim, does not mean that Roberts cannot prove causation through the testimony of another expert witness, to which her testimony would be relevant and admissible, barring any applicable exceptions. It would be premature and unfair for this court to rule otherwise at this time.

In summation, this court rules as follows on the defendants' motion in limine: one, it is granted in part only as to the request to precluding testimony or discussion as to Roberts' expert medical witness, Dr. Kruger, regarding Roberts' alleged shoulder injury; and, two, denied without prejudice as to the request precluding Roberts, her attorney or her other witnesses from testifying as to the alleged shoulder injury.

2000 WL 234318 (Conn.Super.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.